Plaintiff:
    Jamie Edelkind

Defendant's:

    United States Marshall Service

    United States Bureau of prisons

    Essex County Correctional Facility

    Sheriff, Frank Cousins

    Correctional officers:

        Rebecca Oeullette

        James Morecroft

        Joseph Massina

FILED
IN CLERKS OFFICE

Civil File #

05 - 11253 RCL

Referred to MJ MB Boulin
Complaint for relief and damages pursuant to

Violations of civil Rights:

        Cruel + Inhomane treatment

        Deprivation of Religious freedom

        Right to access Counsel:

            Law library + Phone

        Failure to provide for safety.

        Terroristic Threats

1. Jamie Edelkind, herein after Plaintiff, is a natural person, over 21 years of age, a citizen of the United States of America; comes now and alleges a series of continuing illegal and Tortous acts by the above named defendents. The defendant, "The United States Marshell service," herein after "USMS"; The defendant, "The United States Bureau of prisons," hereinafter the "BOP"; The "Essex County Correctional Facility," hereinafter The "ECCF"; "Sheriff, Frank cousins, hereinafter the "sheriff"; and natural persons: Rebecca Oeullette, James Morecroft, and Joseph Massina who at the time of this writing are employees of Sheriff Frank cousins.

2. Plaintiff alleges that defendants both jointly and seperately and in concert action, did seek to and did deprive Plaintiff of his civil and statutorial rights, subject him to cruel and inhumane conditions and treatment, Torture him both physically and mentally, deprive him of his religious freedom and practice thereof, seek to inflict bodily harm upon his person and did so, and in other ways use their positions of authority

To further ignore rules and regulations That were enacted and designed to ensure and prevent such violations of plaintiffs rights.

3. Plaintiff seeks injunctive relief, damages both actual and punitive in An amount exceeding $20,000,000.00 (Twenty million dollars), The ordering of an investigation by The appropriate authorities, and any other relief The court deems appropriate.

Allegations:

1. In August 2003, at The order of the U.S.M.S. plaintiff was held, detained pre-Trial in Union City, Georgia, This County Jail, was and remains a contractor to The U.S.M.S. While there, plaintiff, the day he was brought in To "low Security" population, he was attacked by two individuals for using the phone. These individuals were State Convicted inmates with known violence. The facility has since brought additional charges against them. Edelkind Suffered a concussion, broken ribs, internal bleeding and severe bruising and lacerations.

2. At The Same facility, Edelkind was denied Kosher food for two weeks and then only was given Kosher food after a Rabbi came down and spoke to the Commander on plaintiff's behalf. Plaintiff was released on October 15th 2003.

3. On October 6th 2004, Plaintiff Self-surrendered to The U.S. Bureau of prisons at Devens F.M.C., camp in Ayers, Massachusetts.

4. In accordance with policy, the inmate telephone system (ITS) had posted disclaimers, stating that the phones were subject to monitoring for security purposes. No disclaimer posted or otherwise indicated a Miranda Waiver applying thereto. Further, no disclaimer indicated or stated that the dialogue related to discussing his pending charges would be discussed or divulged to the prosecution in his case. Specifically, plaintiff inquired at Staff about this self same issue. He was assured that they could not be compelled to turn over the recordings without plaintiff's express permission, unless future criminal conduct or security issues were involved. In fact, no unmonitored attorney calls were permitted.

5. The ITS was limited by the warden to 300 minutes per month. The BoP staff refused to alter that limit despite repeated written and oral requests by plaintiff to allow for attorney calls when that time was exhausted. Subsequently, I was unable to prepare a defense or consult with my attorney.

6.

6. For the 16 days preceeding trial, plaintiff could not contact anyone including alternate or registered counsel due to the BoP's ITS policy, thereby depriving him of his 6th amendment rights. Further, the BOP, without notifying plaintiff of their intent, turned over privileged recordings made of privileged dialogue between plaintiff and his wife. Such recordings were later used against plaintiff at trial, without a signed waiver of such privilege. Such action is illegal.

7. On February 23rd 2005, staff at Devens placed Plaintiff in Segregated housing, deprived him of access to his legal materials, refused him access to the law library, refused him attorney calls, refused to give him Kosher food in accordance with his dietary restrictions, and subsequently did not feed him at all, held him in solitary for 4½ days without any recreation, towel, blanket, pillow, reading material, or hygine supplies save for toilet paper.

8. Plaintiff asserts that this conduct by the BOP violates his civil rights as guaranteed under the 1st, 4th, 5th, 6th 8th and 14th Amendments to the constitution. These violations were willful and without provocation by the plaintiff.

9. On February 28th, 2005, the United States Marshall Service took custody of Plaintiff and conducted him to U.S. District Court in Boston. There, through the 8th of March 2005 plaintiff was involved in trial. The USMS had control and custody of the plaintiff. They shuttled him daily between the courthouse and plymouth jail, some 45 minutes each way. (Plymouth Jail is also a contractor to the USMS) During this period of time plaintiff was not provided with any food whatsoever either at the courthouse or at the jail. Plaintiff requested simple juice and vegetables, but was refused. Each day at trial, plaintiff through counsel requested that the judge ensure that the plaintiff was fed. The only meal food given to plaintiff was on March 8th 2005, 1 vegetable wrap and cranberry juice.

10. Plaintiff was strategically and systematically tortured, and reviled by taunts and jeers of USMS marshalls while in their custody and by guards at

Plymouth County Jail. Plaintiff was enfeebled and ill due to the actions of the USMS and remained unable to assist in his defense due to his lack of mental awareness it being compromised by starvation and deprivation. Further, the USMS refused plaintiff access to any of his legal references while proceeding through trial, Therby depriving him of his due process rights.

11. On March 8th 2005, Plaintiff was placed by the USMS in custody at the EccF. They, the EccF, is a Contracted facility to hold Federal Inmates by request of the USMS. On March 11th plaintiff began to receive Kosher meals in accordance with his religious convictions Plaintiff notes that although Kosher, the meals provided do not meet the minimum dietary needs as promulgated by BOP standards for federal inmates. By the time of his receiving his kosher diet, plaintiff had lost 15 - 18 lbs since the 23rd of February. Although 5'11½" plaintiff now weighs 135 lbs from a preincarceration weight of 180 lbs.

12 On or about March 24th, 2005 plaintiff was moved to 240-D unit at EccF, He has been continuously housed there though the date of this filing.

13. Plaintiff has been attempting to prepare and research his pending case, However, the library at EccF is not comported to statutory requirements in both the scope of available Federal research reference materials as well as in providing access to, what there is available, by inmates. The Rules imposed by the EccF limit library access to

10% of the inmates on any given day that the library is open, for a maximum of 50 minutes. The Library is closed weekends and all holidays. This means that in a given 2 week period, an inmate could normally expect 50 minutes of research. Further, the library refuses to allow for same day copying and printing of legal research and composition. Thus an order for copying is placed one day and may be unable to be retrieved until the next time the inmate can get on the library list. Further, the librarian, arbitrarily limits the copying or printing to 10 pages. In most cases a single citation can take 2 to 3 requests to complete

14  Plaintiff asserts that these policies are capricious and serve no real purpose other than to violate the 6th Amendment rights of plaintiff and to impose undue hardship and prejudice on him and other inmates.

15. Plaintiff asserts that Rebecca Ouellette and James Morecroft conspired together and with others to prevent plaintiff from having even this limited access, by subjecting him to falsely contrived Disciplinary proceedings and restrictions, Rebecca Ouellette has organized a cadre of officers and solicited inmates to assist her in a campaign against Plaintiff.

16. Rebecca Ouellette a Correctional officer at ECCF did seek and did libel plaintiff in such manner with other inmates, So as to put Edelkind in fear for his Safety, She specifically, had dialogue with inmate "Workers" making bold assertions and innuendo as to her anti-Semetic (plaintiff is Jewish) and aspersions as to the

Plaintiffs Sexual Orientation. She suggested that Edelkind was a pedophile. She knew that under the "Inmate code" such a person would be attacked by other inmates. In fact when approached by inmates, he showed them his legal work which proved his accusations were purely financial in nature.

17. Robert Payne, a worker inmate, participated in the above issue and at it's conclusion assured plaintiff that despite Ouellette's efforts the other inmates decided to rally around plaintiff and avoid Officer Ouellette.

18. Officer Ouellette has systematically, since this event, escalated the tensions. She was the proximate cause for another inmate to get assaulted as she deliberately disclosed details of his case and charges to other inmates. She has repeatedly singled out the plaintiff for attacks and investigation.

19. On June 1, 2005 officer James Morecroft did, improperly, lock down Plaintiff for reportedly "observing Edelkind of cell 817, inside 817 with an inmate who does not reside in that cell." Plaintiff, in fact, did not invite other inmate into his room. Inmate sought out Plaintiff to give him (the inmate) "legal guidance" in his case. Morecroft told Edelkind that he was going to give Edelkind a "24" so that Edelkind could not go to the library. Plaintiff sent a request to Morecroft requesting reconsideration so that plaintiff

could use the library as he had a desperate need. Morecroft denied the request.

20. On June-2-2005, Plaintiff, pursuant to a grievance he had previously filed, met with Captain French and Deputy Superintendent Steritie, about Library issues. The parties sought to work out a reasonable approach to solve the problem.

21. Despite request, subsequent to the above meeting, by Plaintiff to be put on that days library list, When Plaintiff returned to 240-D, Officer Morecroft refused, Plaintiff requested to see the officer in charge, Lt. Harrington.

22. Lt. Harrington did come and speak with plaintiff. He agreed that the actions by Officer Morecroft, were improper and that Plaintiff should have not been disciplined at all. He said that he would speak to Morecroft and assured me that if I did not file a grievance the animus would end. He also stated that he would caution and advise the floor officers so as to allow the Plaintiff uninterrupted legal calls, So long as there was not a security issue.

23. At 3:00pm Shift Change Morecroft and Ouellette conferred as to Plaintiff. Shortly thereafter Ouellette "set up", her words to other inmates, Plaintiff and created a situation that based upon a false and libelous report kept Plaintiff locked down in his cell without recourse. This period at the time of this writing has been 12 days

Without even a hearing. This was a calculated and deliberate attack upon plaintiff.

24. On June 11, 2005, still locked down, plaintiff received breakfast in his cell. On top of his tray were the words "Kosher? haha." When plaintiff opened his tray he was confronted with sausage instead of his Kosher meal, cereal and fruit. Being locked in plaintiff could not get the attention of either Officer Morecroft or Officer Massina both on duty together.

25. At approximately, 10:00 Am the door was released. Plaintiff walked directly to the floor officer, Joseph Massina, placed his tray containing the sausage down, and asked for his regular Kosher meal. Massina, berated plaintiff. Plaintiff did not respond but returned to his cell and locked in.

26. About 30 minutes there after, Officer Massina came into plaintiffs cell with both a breakfast and lunch tray. He proceeded to call plaintiff "a Troublemaking asshole..." He said they, the officers, "have a plan to get rid of me." He then went on to say "we will see you dead and buried where no one can find your body." he also stated "I wish I never turned your phone on..." and lastly before leaving "I personally guarantee, guarantee, personally, that you will die." He then slammed the door sufficiently hard enough for it to spring open and left.

Pg 100f11

27. Plaintiff was chilled and felt in jeopardy of his safety. He immediately let his room mate and others know of the event. That day as similarly before plaintiff was improperly denied his 1 hour recreation, despite a request to officer Morzcroft.

28. At 3:00 shift change, Plaintiff requested that officer Hernandez speak to him Plaintiff related the events and asked for a grievance form. Plaintiff also asked for his no overdue recreation period. Hernandez did provide the grievance form and did arrange for an abbreviated recreation period. Both

29. At 5:45 pm Plaintiff was permitted to leave his cell, officer Hernandez gave him back his grievance stating that he would get in trouble if he turned it in. Plaintiff left with no other avenue contacted the local police through his wife in Norway to report the latest incident of terroristic threats.

30. Plaintiff also notes, that on a previous occasion of June 6 2005 he was physically assaulted by officer Morecroft both by throwing a request form in Plaintiffs face and by poking him in the chest while yelling at plaintiff all in an attempt to provoke a physical response.

31. The Plaintiff asserts that These actions are pervasive and ongoing further that they as enumerated herein are not completely unique to Plaintiff. Plaintiff asserts that these acts are severally, jointly and collectively, the responsibilities of;

a. Frank Cousins Junior - Sheriff of Essex county

b. EccF - The chartered and contracted facility holding plaintiff.

c. USMS - The lawful body ultimately responsible for the care and custody of the plaintiff.

d. The individual parties and or entities referred to throughout the allegations and named as defendants in the caption of this case.

32. The plaintiff prays that the court enjoin the defendants from continuing in their bad acts and continuing improper conduct. This request is for an immediate injunction pending full hearing of this matter.

33. Further, plaintiff requests that this court liberally construe the form and general styling of this complaint, since plaintiff is currently incarcerated at Eccf, and for the reasons enumerated herein, as well as not having outside counsel or adequate funds to obtain one must proceed pro-se in forma-paupards.

34. For the foregoing reasons the plaintiff requests that a trial on these matters be held and at the conclusion relief in the form of monetary damages be ~~awarded~~ in an amount not to exceed $20,000,000 (Twenty million dollars). Such damages are both actual and punitive. Also plaintiff requests permanent injunctive relief as to the defendants in this matter in regards both the plaintiff and all other inmates,

Signed Pro-se

Jan's Edelkind