UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JAMIE EDELKIND,                                    )
          Plaintiff                         )
                                  )
v.                                                 )
                                  )    C.A. No. 05-11253-RCL
UNITED STATES MARSHAL SERVICE,                     )
ET AL.,                                            )
          Defendants.                       )
_____ )

MEMORANDUM AND ORDER

LINDSAY, D.J.

       For the reasons stated below: (1) Plaintiff's Application to Proceed *in forma pauperis*

(#4) is allowed, and an assessment of the initial partial filing fee is made pursuant to 28 U.S.C.

§ 1915(b);  (2) Summonses shall issue with respect to Defendant Sheriff Frank Cousins, and

Correctional Officers Rebecca Oeullette, James Morecraft, and Joseph Massina, with respect to

Plaintiff's claims of (a) lack of access to the courts/library access; (b) denial of religious

expression;  (c) deliberate indifference to health (nutrition) and safety (threats); and (d) denial of

due process in connection with his lock-down; (3) The Unites States Marshal Service ("USMS")

shall bear all costs of service of process; (4) Plaintiff's claims against the USMS, United States

Bureau of Prisons ("BOP"), and Essex County Correctional Facility ("ECCF") are dismissed,

and (5) claims directly challenging Plaintiff's criminal conviction are dismissed, without

prejudice.

BACKGROUND

       On June 15, 2005 Jamie Edelkind, a prisoner at ECCF, filed a § 1983/Bivens[1] civil rights

_____

       [1]Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) (establishing cause of
action enabling plaintiff to seek judicial relief against federal officers who allegedly violated his

Complaint in this Court against various Defendants, including: (1) the USMS; (2) the BOP; (3) ECCF; (4) Sheriff Frank Cousins; (5) Correctional Officer Rebecca Oeullette; (6) Correctional Officer James Morecroft; and (7) Correctional Officer Joseph Massina.

In his Complaint, Plaintiff asserts several challenges to his underlying criminal trial and conviction, including lack of access to counsel and the Courts. Compl. ¶¶ 4-7. The criminal case docket reflects that Plaintiff was convicted by a jury and has been sentenced by Senior District Judge Lasker. His appeal with the First Circuit Court of Appeals is pending.[2]

Plaintiff also makes numerous claims regarding the conditions of confinement at the various facilities in which he was incarcerated, including, *inter alia*, lack of adequate nutrition, failure to provide Kosher meals, assault and threats by correctional officers, lack of law library access, denial of religious expression, and retaliation.

More specifically, Plaintiff claims that while at FMC Devens, he was not permitted to phone his attorney without being monitored. Id. ¶ 4. He also states that phone access was limited to 300 minutes per month, which did not allow for attorney calls after the minutes were depleted. Id. ¶ 5. Plaintiff claims that for the 16 days prior to his trial, he was unable to contact anyone, including his attorney. Id. ¶ 6. He also claims that recordings of his telephone conversations were used against him at trial without a signed waiver. Id. Plaintiff further alleges that he was placed in segregated housing on February 23, 2005, and was denied access to the law

---

Fourth Amendment rights). See also, Aversa v. U.S., 99 F.3d 1200, 1213 (1st Cir. 1996)(holding an individual may sue a federal official in his or her personal capacity for damages arising out of a constitutional violation committed under color of federal law).

[2]  See United States v. Jamie Edelkind, 04cr10066-MEL. Edelkind was sentenced on July 12, 2005 to 60 months imprisonment, with other terms and conditions. A Notice of Appeal was filed July 20, 2005.

library and prohibited from contacting his attorney.  Id. ¶ 7.

Additionally, Plaintiff alleges a constitutional violation of his right to freedom of religion.  Id.   He states that he is Jewish, and that he requires Kosher meals.  Id.  Plaintiff alleges that for two weeks while incarcerated at the Union City County Jail in Georgia he was denied Kosher food.  Id. ¶ 2.  On February 23, 2005, Plaintiff claims he was again denied Kosher food while incarcerated at FMC Devens, and that he was subsequently denied any food at all, and held in confinement for 4.5 days, without toiletries.  Id. ¶ 7.

Plaintiff also makes several allegations against the USMS.  He claims that from February 28, 2005 until March 8, 2005, the USMS took custody of him and transported him to this Court for his trial, and failed to provide him with food during this time period.  Id. ¶ 9.  Plaintiff alleges that he was not given any food while at the Court or in jail until March 8, 2005. Id.  He also claims that he was "strategically and systematically tortured" by the USMS and guards at Plymouth County Jail.  Id. ¶ 10.  He also claims that as a result of this he was "enfeebled and ill," and thus unable to assist in his own defense.  Id.

Plaintiff then claims that after he was transported to ECCF on March 11, 2005, his meals were Kosher, but failed to comply with minimum nutritional requirements.  Id. ¶ 11.  He further asserts that as a result of the nutritional deficit, his weight has dropped from 185 lbs. to 135 lbs. Id.

In support of his allegations, Plaintiff recounts an incident which occurred at ECCF where he was given a sausage for breakfast instead of a Kosher meal.  Id. ¶ 24.  Accompanying the meal was a note which stated:  "Kosher meal?... haha." Id.  Plaintiff contends that Defendants Officer James Morecroft and Joseph Massina were involved in this incident.  Id.

Plaintiff also asserts that the law library at ECCF does not comply with the statutory requirements for prison law libraries, and that his access was insufficient because strict time limits were imposed.  Id. ¶ 13  He claims that a prisoner could expect only 50 minutes of research every two weeks, and the printing ability was limited. Id.  As a result of this, he alleges that he was unable to assist in his ongoing criminal trial.  Id.

Additionally, Plaintiff claims that Defendant Officer Oeullette made unspecified derogatory anti-semitic and sexual orientation comments, and Oeullette falsely suggested that Plaintiff was a pedophile.  Id. ¶ 16.   He also claims he was improperly locked down in his cell on June 1, 2005,  and that he was the victim of an assault by Defendant Officer Morecraft on June 6, 2005.   Id. ¶ 19.   He claims Officer Morecraft threw a request form in his face and poked him in the chest.  Id. ¶ 30.

Subsequently, Plaintiff claims that on June 11, 2005, a specific threat was made towards him by Defendant Officer Massina.  He claims he was called "a trouble making asshole...," and that the officers said they "had a plan to get rid of me," and also stated: "[W]e will see you dead and buried where no one can find your body."  Massina is alleged to have further stated: "I guarantee personally that you will die." Id. ¶ 26. Also on the same date Plaintiff claims that he was denied his one hour recreation period.  He further claims that he attempted to file a grievance with the prison for the events of June 11th, but his forms were returned to him by Officer Hernandez, who stated that he would "get in trouble" if he turned it in.  Id. ¶¶ 28-29.

Plaintiff states that at the time of his Complaint and for 12 days prior, he was locked down in his cell after being "set up" by Defendants Officer Morecroft and Officer Oeullette.  Id. ¶ 23.  It is during this lock down period that Plaintiff received the sausage for breakfast, as

4

described above.  Id.

Plaintiff seeks immediate injunctive relief and monetary damages, "to exceed $20,000,000."  Id. ¶ 34. Plaintiff also asks for the Court to enjoin the Defendants from "continuing their bad acts and improper conduct."  Id. ¶32.

Accompanying his Complaint was an affidavit to proceed *in forma pauperis* which lacked the requisite prison account information.  By Memorandum and Order dated July 25, 2005, this Court directed Plaintiff to either pay the $250 filing fee or file a completed Application to Proceed *in forma pauperis*, accompanied by his prison account statement for the six month period preceding the filing of the Complaint,  pursuant to 28 U.S.C. § 1915(b).   The Memorandum and Order also directed the Treasurer's Office at ECCF to provide the requisite prison account information.

On August 9, 2005  Plaintiff filed an Application/Motion for Leave to Proceed *in forma pauperis* (#4), accompanied by a prison account summary for a four month period (March 23, 2005 through July 27, 2005).  A statement was also received by the Canteen Officer at ECCF for the period March 23, 2005 through August 7, 2005).

DISCUSSION

I.      Application to Proceed *In Forma Pauperis*

Based on the financial disclosures submitted by Plaintiff on August 9, 2005 demonstrating that he has no assets or income, and coupled with the account information submitted by ECCF demonstrating Plaintiff's current prison account balance is $2.50,  the Court finds Plaintiff qualifies for *in forma pauperis* status and allows the Plaintiff's Motion for Leave to Proceed *in forma pauperis* (#4).  However, the prison account summaries provided by both

the Plaintiff and ECCF does not provide the information required by the Court pursuant to the

July 25th Memorandum and Order.   Attempts made by the clerk for additional prison account

information were unsuccessful.  In light of this, for assessment purposes, the Court will consider

the Plaintiff's financial situation based on the time period from March 23, 2005 through August

7, 2005.

Accordingly, based on the average monthly balance in Plaintiff's prison account for the

time period noted above, the Plaintiff is assessed an initial partial filing fee of <u>$47.00</u> pursuant

to 28 U.S.C. § 1915(b)(1).   The remainder of the filing fee of <u>$203.00</u> is to be assessed and

collected in accordance with 28 U.S.C. § 1915(b)(2).   This assessment is without prejudice to

Plaintiff seeking reconsideration of the assessment only upon the filing of a certified copy of his

prison account statement for the time period December 15, 2004 through June 15, 2005.

II.     <u>Plaintiff's Complaint is Subject to Screening</u>

Because Edelkind is a prisoner, his Complaint is subject to the provisions of the Prison

Litigation Reform Act.  The Prison Litigation Reform Act of 1995 ("PLRA"), Title VIII of

Pub.L. 104-134, 110 Stat. 1321-1375 (1996), enacted several provisions which grant this Court

the authority to screen and dismiss prisoner complaints.  <u>See</u> 28 U.S.C. § 1915 (proceedings *in

forma pauperis*); 28 U.S.C. §1915A (screening of suits against governmental officers and

entities).

Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to

proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact,

<u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which

relief may be granted or seeks monetary relief against a defendant who is immune from such

relief.  See 28 U.S.C. §1915(e)(2).  *In forma pauperis* complaints may be dismissed *sua sponte*

and without notice under § 1915 if the claim is based on an indisputably meritless legal theory

or factual allegations that are clearly baseless.  Id.; Denton v. Hernandez, 504 U.S. 25, 32-33

(1992).

Additionally, § 1915A authorizes the Court to review prisoner complaints in civil

actions that seek redress from a governmental entity or officers or employees of a governmental

entity and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee,

if it lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant

immune from such relief.  28 U.S.C. § 1915A.


III.     Challenges to Criminal Conviction

To the extent that Plaintiff is seeking to collaterally attack his criminal conviction (and

sentence), by claiming that his lack of access to his attorney and to the Courts impaired his

ability to assist in his own defense, the claims are not ripe, and the Court will not consider these

claims either as a claim for habeas relief, or as a claim for monetary damages.   Plaintiff

currently has an Appeal pending in the First Circuit Court of Appeals, and has not filed this

action as a motion to set aside, vacate or correct his sentence under 28 U.S.C. § 2255, and the

Court will not construe this Complaint to encompass such request.[3]

---

[3]A motion to vacate, set aside, or correct a sentence under § 2255 provides the primary
means of a collateral attack on a federal sentence.  See United States v. DiRusso, 535 F.2d 673,
674-676 (1st Cir.1976) (§ 2255 grants jurisdiction over post-conviction claims attacking the
"imposition or illegality of the sentence."); Rogers v. United States, 180 F.3d 349, 357 n.15 (1st
Cir. 1999) *cert. denied*, 528 U.S. 1126 (2000) (motion under § 2255 is the "exclusive remedy in
the sentencing court for any errors occurring at or prior to sentencing, including construction of
the sentence itself.")

Moreover, any claims for money damages arising out of his alleged inability to defend his criminal case or his conviction are barred by the favorable termination rule of Heck v. Humphrey, 512 U.S. 477 (1994).[4] See also Sholley v. Town of Holliston, 49 F. Supp. 2d 14, 18 (D. Mass. 1999) ("favorable termination" rule of Heck precluded plaintiff's claims where he was convicted for one, but not all, of the charges upon which he was arrested).

Accordingly, to the extent Plaintiff seeks to challenge his criminal conviction through claims that he was unable to participate in his defense, and/or seeks monetary damages for same, such claims are dismissed without prejudice.

IV.    Failure to Exhaust Administrative Remedies

Section 1997e(a) of title 42 provides that no action shall be brought with respect to "prison conditions" by a prisoner "until such administrative remedies as available are exhausted." 42 U.S.C. § 1997e(a). Prison conditions, for purposes of § 1997e(a), have been broadly interpreted to include "all inmate suits about prison life." Porter v. Nussle, 534 U.S. 516, 532 (2002). Thus, Plaintiff's claims about insufficient food, lack of access to the law library and the courts, health and safety, and religious expression claims all involve "prison

_____

[4]In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that where a prisoner seeks damages for an allegedly unconstitutional conviction, he has no cause of action under § 1983 because the success of the suit would effectively invalidate the prisoner's underlying conviction and sentence. Heck, 512 U.S. at 486-487. In order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. Id. at 486. The holding of Heck has been extended to other sections of the Civil Rights Act. See, e.g., Amaker v. Weiner, 179 F.3d 48, 51 (2nd Cir. 1999)(holding Heck applies with respect not only to § 1983 claims but also to §§ 1981, 1985(3) and 1986); accord Martinez v. Ensor, 958 F. Supp. 515, 517-518 (D. Col. 1997) (§§ 1981 and 1985).

conditions" and are subject to the exhaustion of remedies requirement.  See id.; accord Menina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 34 (1st Cir. 2002).

The fact that Plaintiff seeks injunctive relief is insufficient to overcome the exhaustion requirement.  See Booth v. Churner, 532 U.S. 731, 740 (2001) (a prisoner must exhaust all available administrative processes regardless of the relief offered through those procedures); accord Menina-Claudio,  292 F.3d 31, 35 (1st Cir. 2002) (no futility exception to the exhaustion requirement);  cf. Casanova v. Dubois, 289 F.3d 142, 147 (1st Cir. 2002) (citation omitted) (although the exhaustion requirement is not jurisdictional, it is mandatory).

However, since Plaintiff here has made several allegations regarding his inability to file grievances with ECCF despite his attempts to do so, the Court will not dismiss the claims *sua sponte* on exhaustion grounds.

V.    Plaintiff's Section 1983 Claims

A.    Plaintiff's Claim of Lack of Access to the Courts

In order to state a claim of violation of due process by restricted access to a prison law library, an inmate must show: (1) he has been denied "access to the courts," and (2) that as a result he has sustained an "actual injury."  Bounds v. Smith, 430 U.S. 817, 828 (1977); Lewis v. Casey, 518 U.S. 343, 349 (1996).

The Supreme Court has recognized that prisoners have a right to "access the courts," by means of a prison law library or other form of legal assistance.  Bounds, 430 U.S. at 828 (right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.)

The First Circuit, in accordance with <u>Bounds</u>, found that restricted access to a prison law library deprived inmates of their constitutional right to due process. <u>Cepulonis v. Fair</u>, 732 F.2d 1 (1st Cir. 1984) (Zobel, J), (reversed in part on other grounds) (holding that restricted access to a law library, even to maximum security inmates, was a violation of due process). In <u>Cepulonis,</u> inmates were restricted approximately three (3) hours of research time per month. Similarly, Edelkind alleges that inmates at ECCF are restricted to 50 minutes of research every 2 weeks, or under 2 hours per month. <u>Id.</u> at 3.

Furthermore, Plaintiff contends that the restricted access to the law library virtually denies him access to the law library constitutes an "actual injury." In <u>Lewis</u>, 518 U.S. at 349, the Supreme Court held that in order to establish a violation of the "right of access" to the courts, a plaintiff must allege "actual injury." <u>Id.</u>   "Actual injury," derives from the doctrine of standing and requires a prisoner to demonstrate that any alleged shortcomings in a legal library or assistance program hindered his efforts to pursue a legal claim involving direct or collateral attacks on sentences or challenges to conditions of confinement.[5] <u>Id.</u> at 349, 354-355. To show "actual injury," an inmate must prove that the alleged shortcomings of the prison library have impaired, or are currently impairing, his efforts to pursue a non-frivolous legal claim. <u>Id.</u> at 351.

Here, Plaintiff alleges that the restricted time limit of law library access has impaired his ability to research and assist in his criminal defense, and in the filing of this Complaint. He

--------

[5]The <u>Lewis</u> court listed as examples of "actual injury" an allegation that a complaint was dismissed for failure to satisfy a technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known or an allegation that a prisoner was unable to bring an action to court due to the inadequacies in the law library. <u>Id.</u> at 351.

currently has a criminal appeal pending.  Accordingly the Court will consider this claim as part

of his due process claim of lack of access to the courts, and will permit summonses to issue as

to Defendant Sheriff Frank Cousins.

B.    Freedom of Religion Claims

Plaintiff alleges violations of his right to freedom of religion pursuant to 42 U.S.C.

§ 1983, by purposefully denying him Kosher meals on several occasions.  He alleges he was

given a sausage for breakfast as a joke.

In order to state a cognizable claim under § 1983, a plaintiff must show that a person,

acting under color of state law, deprived him of rights secured by the Constitution or laws of the

United States.  Parratt v. Taylor, 415 U.S. 527, 535 (1981).

The Second Circuit has held that prison officials are responsible for providing "a diet

sufficient to sustain the prisoner in good health without violating the Jewish dietary laws."

Brown v. Johnson  2003 WL 360118, at *5 (W.D.N.Y. 2003) citing Kahan v. Carlson, 527 F.2d

492, 496 (2nd Cir. 1975).[6]

Accordingly, this Court will permit Plaintiff's § 1983 freedom of religion claims to

proceed.

---

[6] Although not alleged, Plaintiff may also have a cause of action under the Religious Freedom Reformation Act, ("RFRA"), 42 U.S.C. § 2000bb-1.  While RFRA was held unconstitutional as applied to state and local governments, City of Boerne v. Flores, 521 U.S. 507 (1997), it has been widely accepted in the circuit courts that RFRA is still valid as applied to the federal government (and consequently federal detainees).  See O'Bryan v. Bureau of Prisons, 349 F.3d 399, 400-401 (7th Cir. 2003); Guam v. Guerrero, 290 F.3d 1210, 1218-1221 (9th Cir. 2002); Henderson v. Kennedy, 265 F.3d 1072, 1073 (D.C. Cir. 2001); Kikumura v. Hurley, 242 F.3d 950, 958-60 (10th Cir. 2001); Christians v. Crystal Evangelical Free Church, 141 F.3d 854 (8th Cir. 1998) (all holding that the Boerne decision has no effect on the statute's constitutionality as applied to the federal government) (emphasis added).  The First Circuit has yet to address this issue.

C.     Claims of Assault and Violent Threats By Corrections Officers

Plaintiff's Complaint alleges several incidents of assault and threats by Officers Oeullette, Morecraft, and Massina.

With respect to his allegation that Officer Morecraft threw a paper at him and "poked" him, Plaintiff fails to state a cognizable legal claim. A "mere poke" does not rise to the level of a constitutional violation. See Black Spotted Horse v. Else, 767 F.2d 516 (8th Cir. 1985) (pokes in the back or use of belligerent tone by guard does not violate the Eighth Amendment).

With respect to Plaintiff's claims of psychological injury in the verbal threats made by prison officials, there are differing opinions in the circuits as to whether a claim of psychological injury to a prisoner is sufficient to state a claim. Some courts have held that psychological injury is within the realm protected by the Eighth Amendment. See, e.g. Burton v. Livingston, 791 F.2d 97 (8th Cir. 1986) (death threat by guard is actionable where evidence showed that the threat was made in response to the prisoner's exercise of constitutional rights). However, other courts have found that verbal threats are not actionable. See, Oltarzewski v. Ruggiero, 830 F.2d 136 (9th Cir. 1987) (verbal harassment or abuse is not sufficient to state a constitutional claim); See also Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979); Nelson v. Herdzick, 559 F. Supp. 27 (W.D.N.Y. 1983) (verbal threats do not violate the Constitution).

Because Plaintiff's claims of psychological injury include death threats by Defendant Correctional Officer Massina, as well as more vague allegations of verbal threats and harassment by Officer Oeullette, in conjunction with anti-semitic comments and sexual orientation comments, the Court will not dismiss these claims *sua sponte* and will permit summonses to issue as to these Correctional Officer Defendants.

D.    Claims Against the U.S. Marshal and the U.S. Bureau of Prisons

Plaintiff's Complaint makes several allegations against the U.S. Marshal and the United

States Bureau of Prisons.  These claims are subject to dismissal for several reasons.

1.    Sovereign Immunity

It is well settled that under the doctrine of sovereign immunity, the United States

(through various branches and departments) enjoys immunity from suit except in those

instances in which it has expressly consented to be sued.[7]  United States v. Testan, 424 U.S.

392 (1976).  Therefore, Plaintiff's claims against the USMS, and the BOP, both of which are

federal agencies, are dismissed on sovereign immunity grounds.

Furthermore, to the extent Plaintiff's claims are construed as Bivens claims, it is well

established that a Bivens action will not lie against agencies of the federal government, and the

BOP and USMS are therefore not proper parties as Defendants to such claims.  See Meyer v.

F.D.I.C., 510 U.S. 471, 484-86 (1974).

2.    Claims Against the BOP and the USMS

Additionally, Plaintiff's claims against the BOP and the USMS are insufficient as pled,

and do not comply with Rule 8(a) of the Federal Rules of Civil Procedure, nor do they state a

claim upon which relief may be granted.[8]

---

[7] The Federal Torts Claims Act ("FTCA") provides for a waiver of sovereign immunity,
in certain circumstances.  See 28 U.S.C. § 2680.  Here, however,  Plaintiff here has failed to
make any specific claims under the FTCA in the current Complaint, nor has he alleged to have
satisfied the presentment requirement under 28 U.S.C. § 2675.  Therefore, the Court will not
construe these claims as such.

[8]Although the Court recognizes that *pro se* complaints must be liberally construed,
Haines v. Kerner, 404 U.S. 519, 520-21 (1972),  Plaintiff's claims against the BOP are
nonetheless subject to dismissal.   Rule 8(a) of the Federal Rules of Civil Procedure requires a

First, with respect to the BOP, the Complaint identifies the BOP as a Defendant in this action.  However, Plaintiff fails to state any facts which link the BOP to the alleged incidents and has thus failed to make any link between the BOP and the Defendant officers of ECCF.  Therefore, Plaintiff has failed to state a cognizable claim against the BOP.

With respect to the USMS, Plaintiff alleges that they failed to provide him with food when he was brought into the courthouse.  He attempts to bring suit against the entire USMS.  However, as noted previously, sovereign immunity bars suit against the USMS.  Additionally, Title 28 United States Code, section 1344(b) provides a separate ground for dismissal of the federal Defendants.  Section 1344(b)(2) provides:

> No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States, or any agency, officer, or employee of the government, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Id.  Here,  Plaintiff has not alleged that the conduct by the USMS (or the BOP for that matter) caused him to suffer any physical injury.  While he alleges that he lost a substantial amount of weight, he does not allege that such weight loss resulted in a "physical injury," nor does he allege such injury was a proximate cause of actions by the USMS or BOP, as opposed to the

---

plaintiff to include in the complaint, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)), such that the defendant is afforded a "meaningful opportunity to mount a defense," Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)).  "In a civil rights action ..., the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." Educadores PuertorriqueZos en Acción v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004).  Although "the requirements of Rule 8(a)(2) are minimal ... minimal requirements are not tantamount to nonexistent requirements." Id.  (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)).

malnutrition alleged against ECCF.

        3.      No *Respondeat Superior* Liability

Plaintiff does not identify which deputy marshal(s) were responsible for his transport and care.  To the extent Plaintiff's complaint asserts that the BOP and/or the USMS is/are liable for civil rights violations committed by its employees,  Plaintiff's claims against these Defendants are subject to dismissal, because there is no *respondeat superior*  liability based on actions of their employees.  Liability under § 1983 (and <u>Bivens</u>) is direct, not vicarious. <u>Pinto v. Nettleship</u>, 737 F.2d 130, 132 (1st Cir. 1984) (no *respondeat superior* liability under § 1983; liability can only be imposed upon officials who were involved personally in the deprivation of constitutional rights). see <u>Guzman v. City of Cranston</u>, 812 F.2d 24, 26 (1st Cir. 1987).

Accordingly, because liability cannot be based solely on an employer-employee relationship with a tortfeasor,  Plaintiff's claims against the USMS are subject to dismissal.  <u>See Rodriguez-Vazquez v. Cintron-Rodriguez</u>, 160 F. Supp. 2d 204, 210-213 (D. P.R. 2001) (dismissing claims, allegation that defendant was "ultimately responsible for the selection and/or supervision and/or training and/or discipline of his subordinates" was insufficient).

        E.      <u>Plaintiff's Claims Against Essex County Correctional Facility ("ECCF")</u>

Plaintiff has also named ECCF as a Defendant.  ECCF is not a separate, legally distinct entity, but a department within the Commonwealth of Massachusetts. <u>See Stratton v. City of Boston</u>, 731 F.Supp. 42, 26 (D. Mass. 1989).  As a division of the Commonwealth, it is entitled to Eleventh Amendment immunity.  <u>Alabama v. Pugh</u>, 438 U.S. 781, 781 (*per curiam*) (11th Amendment generally is recognized as a bar to suits against a State, its departments, and agencies unless the State has consented to suit); <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n. 14

(1985) (citing <u>Pugh</u>) (unless a State has "waived its Eleventh Amendment immunity or Congress has overridden it, … a State cannot be sued directly on its own name regardless of the relief sought.").

Accordingly, Plaintiff's claims against ECCF are dismissed, *sua sponte*.

   F. <u>Plaintiff's Claims of Deliberate Indifference</u>

Plaintiff's claims of deliberate indifference to his nutritional and hygienic needs are construed as Eighth Amendment violations. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). Deliberate indifference has been defined as "conduct that offends evolving standards of decency in a civilized society." <u>DesRosiers</u>, 949 F.2d at 18, <u>citing</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981). <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 102-03, 106 (1976).

Specifically, Plaintiff alleges that he was denied food and placed into solitary confinement for 4.5 days without toiletries and other necessaries such as a pillow, blanket, etc. <u>See</u> Compl. ¶ 7. Additionally, as previously noted, Plaintiff alleges that he was later provided with Kosher food, but that it did not comply with the minimum nutritional requirements, and as a result he lost 35 lbs. <u>Id.</u> ¶ 11.

Because the allegations raise factual issues, the Court will not dismiss these claims *sua sponte*, and will permit a summons to issue with respect to Defendant Sheriff Frank Cousins.

   VI. <u>Plaintiff's Due Process Claim</u>

Finally, Plaintiff alleges that as of the mailing of his Complaint, and for 12 days prior, he has been "locked down" in his cell without a hearing. <u>Id.</u> ¶ 23. While the claim fails to provide specific facts or circumstances surrounding the lock-down, the Court will not dismiss this claim *sua sponte*, and will require a response by Sheriff Cousins upon service of the

Complaint.[9]

VII.     Service of Process by United States Marshal's Office

The USMS shall bear all costs of service of process on the Defendants Sheriff Frank

Cousins, and Correctional Officers Rebecca Oeullette, James Morecraft, and Joseph Massina, in

accordance with this Memorandum and Order.

Plaintiff is directed to provide the USMS with all requisite information to enable that

office to effectuate service on the defendant. The USMS shall bear all costs of service on the

defendant, however, it is the Plaintiff's responsibility to ensure timely service, in compliance

with Federal Rules of Civil Procedure 4, and this Court's Local Rules.

In view of any potential conflict of interest issues raised by the fact that Plaintiff has

sought to sue the USMS in this action, the Plaintiff may elect to make other arrangements for

service of process, at his expense.

CONCLUSION

Based on the foregoing it is here by ORDERED:

1.     Plaintiff's Application to Proceed *in forma pauperis* (#4) is allowed;

2.     Plaintiff is assessed  an initial partial filing fee of **$47.00**, pursuant to 28 U.S.C.
       § 1915(b)(1); This assessment is without prejudice to Plaintiff seeking reconsideration
       upon the filing of a certified copy of his prison account statement for the time period
       from December 15, 2004 through June 15, 2005;

3.     The remainder of the fee **$203.00** is to be assessed and collected in accordance with 28
       U.S.C. § 1915(b)(2);

---

[9]It is unclear whether the lock down constituted a disciplinary sanction.  If so, the
minimum due process requirements set out in Wolff v. McDonnell, 418 U.S. 539, 554-5 (1974)
and its progeny would apply. See also Edwards v. Balisok, 520 U.S. 641, 648 (1997);
McGuiness v. Dubois, 75 F.3d 794, 797-798 (1st Cir. 1996); Jenkins v. Haubert, 179 F.3d 19, 21
(2nd Cir. 1999); Shabazz v Cole, 69 F. Supp. 2d 177 (D. Mass. 1999)(in accord with 2nd Circuit).

4.  Summonses shall issue with respect to Defendant Sheriff Frank Cousins, and Correctional Officers Rebecca Oeullette, James Morecraft, and Joseph Massina, with respect to Plaintiff's claims of (a) lack of access to the courts/library access; (b) denial of religious expression; (c) deliberate indifference to health (nutrition) and safety (threats); and (d) denial of due process in connection with his lock-down;

5.  Plaintiff's claims against the USMS, the BOP, and ECCF are dismissed;

6.  To the extent Plaintiff's claims seek to directly challenging his criminal conviction and seek monetary damages, those claims are dismissed, without prejudice; and

7.  The Unites States Marshal Service ("USMS") shall bear all costs of service of process; Plaintiff is directed to provide the United States Marshal's Office with all requisite information to enable that office to effectuate service on the defendant. The United States Marshal's Office shall bear all costs of service on the defendant, however, it is the Plaintiff's responsibility to ensure timely service, in compliance with Federal Rules of Civil Procedure 4, and this Court's Local Rules.

SO ORDERED.

/s/ Reginald C. Lindsay

Dated: October 4, 2005                REGINALD C. LINDSAY
                                      UNITED STATES DISTRICT JUDGE